and 24-3204 Eastern Missouri, Thomas Sanderson v. James Houdinick. Mr. Seidlich. May it please the Court, William Seidlich on behalf of the State of Missouri. Seven words. No candy or treats at this residence. This case concerns... I didn't understand one of those words. You're going to have to speak up and look in the mic. I'm sorry, Your Honor. Seven words. No candy or treats at this residence. This case concerns whether requiring registered sex offenders to post those words on their door violates the First Amendment. It does not for three reasons. First, in requiring this minimal disclosure, the government is not prescribing what shall be orthodox in matters of religion or politics. Nor does it require the offender to parrot a governmental ideological propaganda that he does not want to speak. Asserting that this case equates to Barnett and Woolley trivializes the core First Amendment holdings of those cases. Second, the unadorned factual statement, no candy or treats at this residence, is not a self-detrimental message. It is a note that any law-abiding citizen could leave on their door to signal to families that they don't want to participate in Halloween. Finally, this innocuous posted note message comes nowhere close to the detailed and very public disclosures that offenders must make under SORNA. Indeed, if this no candy statement violates the Constitution, then so is the requirement to register and report as a sex offender under SORNA, a position that the Fifth Circuit soundly rejected in the Arnold case, which relies on these courts. The case called Reed, which the district court paid great attention to and the parties ignore, for the most part. I'm sorry, Your Honor. What was the court? Yes. As I read Reed, I think that was Justice Thomas trying to clarify what compelled speech requires. And I thought he started out by saying he was distinguishing between content-based and viewpoint-based. And he starts out by saying, at a minimum, you have to, when you have a sign case, as opposed to other kinds of compelled speech, the sign has to be content-based on its face. Certainly. Right? Why doesn't anyone talk about that? How is this sign content-based on its face? So, Your Honor, Reed dealt with the temporary directional signs ordinance. This is a friendly question. I want to know, basically, why didn't you argue this? Well, Your Honor, because we see this as, the question here is whether the speech was compelled or not. Well, you have to, in the very few sign cases there are, it's at least compelled conduct.  Right. That's your argument. Yes, that is our argument, that essentially the sign. If it's more than compelled conduct, it has to have a speech component that invades the First Amendment protections. That's right. So it has to be content-based on its face, certainly to get to strict scrutiny. That's right. That's absolutely right. If the plaintiffs don't get there, I cannot see how they prevail. That's exactly right, Your Honor. And here, I mean, as has been... So how is this content-based on its face? So this... How are those seven words, well, do you think they are content-based on their face? I don't, I'm not sure that, since we're saying that this is speech incident to conduct, which is the core of our argument, effectively, it's not attempting to regulate the content of speech because it's simply a factual disclosure, which... So why isn't that your first position? Oh, well, it's a core position that we've espoused throughout this appeal, but of course this case was... You shouldn't argue it. This case was a little bit difficult in terms of we weren't able to adequately build an evidentiary record because the district court... You built a record that McClendon didn't have, or Simme. Yes, Your Honor, but... It was just considered inadequate. Yes, Your Honor. Anyway, but yes, another point that I'd like to make real quickly is that, the merits of the First Amendment claim, the court would also have to at least vacate and remand the universal injunction, given the Supreme Court's recent Trump versus CASA case. So for these reasons, the court... This was a facial challenge. Yes, Your Honor. Right, to the statute. And, of course, the district court didn't have Trump v. CASA at the time it issued the injunction. What is your position now? What is the practical effect of a facial versus as-applied challenge in light of Trump v. CASA? So, Your Honor, it certainly would still be... The core question, as laid out in that choice, would still be the burden on the plaintiff to show that the substantial amount of applications of the law are unconstitutional. Well, I guess what's the practical effect? Sure. So this district court has said that this statute is unconstitutional on its face. And is it Missouri's position that that only applies now to Mr. Sanderson? Mr. Sanderson and any other plaintiffs. Of course, you know, the plaintiffs... Other plaintiffs could try to file a class action and then... Well, so if another plaintiff brought another case, Missouri would be bound by this district court's opinion? Or how... What would happen? Well, I think the binding effect would come if this court were to rule on the merits. Okay, yeah. Let's assume that it's, for purposes of this question, it's facially unconstitutional. I'm just trying to kind of noodle out the practical impact of your argument, which I understand in light of the recent Supreme Court opinion. Certainly. Yeah, yeah. It's certainly something that people around the country are trying to think about. Yes. I want to carry on. Take that on a more primitive level, mostly for... I want your opposing counsel to think about this. If Mr. Sanderson had... It's now settled in the Eighth Circuit that both facial and as-applied claims can be made. Correct. And the district court wouldn't tolerate consideration of the as-applied. But if Mr. Sanderson were to lose an as-applied challenge, how could he possibly have standing to bring a facial challenge? I don't know, Your Honor. I think not. Yeah. I think that's a case-ending question. Absolutely. I would agree. You know, I want to get back to the content-based regulation point where we started this conversation, or the argument. And that is that we have Riley that's kicking around out there that says basically anytime you mandate somebody to say something they wouldn't otherwise say, that's a content-based regulation of speech. Now, that seems kind of at odds with the sort of line of signed cases that are floating out there around there, too. And I don't know if the signed cases are a subset of speech and that therefore the standards are a little bit different, because it does seem that it's fairly clear that Mr. Sanderson wouldn't have been making any speech but for being compelled by the government, right? Certainly. So then, if signed cases are different, why are they different? Why should they be different? Well, we believe that it's easier to look at this as a speech incident to conduct case, just like a regulation that requires a building owner to have an exit sign on their door. That's not government speech. That's simply regulation incident to conduct. Or as this case held in Arkansas Times, that the disclosure there was simply speech incident to conduct. So that's why we focus more on the speech incident to conduct cases as opposed to the signed cases. But ultimately, I think that you get to the same place regardless of which line of cases you're looking at, certainly. Well, let's assume that we do get to strict scrutiny on this and we're considering it. How is this narrowly tailored? As I saw the record as it came out at the district court, even the Missouri's own witnesses really couldn't support how this particular requirement added anything to the ultimate compelling interest. I think everyone agreed compelling governmental interest, but that this particular requirement just didn't further it. Well, Your Honor, there was plenty of testimony below from the expert that it's nearly impossible to tell which offender will be inclined to re-offend again. And that having this effectively two-way barrier in between the offender and the children trick-or-treating for Halloween really is the narrowest thing that you can do. And the narrow tailoring comes from the fact that we are not, that Missouri is not requiring the offender to disclose that they are an offender. It's simply requiring them to post a notice on their door that they're not participating in Halloween. And we have testimony from below that discussed how even law-abiding citizens will place similar messages on their door simply because they don't want to participate in Halloween. That comes from Sergeant Jason Heffern in the transcript below. But even the sign itself could be, as I understood the testimony in the district court accepted, was it could be any size in pencil. Like, there wasn't really any added value even from the officer's standpoint. So, Your Honor, I think that also still speaks to narrow tailoring and that this isn't ultimately a forced ideological message by the government. The offender in this case still has a great deal of agency over how they wish to present the message. If they wish to do it as a simple posted note on the door, that's sufficient. Why wouldn't it say something instead like, just no trick-or-treating? I mean, I don't mean to dance on the head of a pin here, but that could actually be a false statement. No candy or treats at this house. In a literal sense, if I put that on my door, I got candy in here. I'm not going to give it out on a Halloween night. It just doesn't seem to be focused in on what it is that the state is trying to get at. It's still conveying the message that this person isn't participating in Halloween, which the plaintiff here does not challenge the other provisions of the statute, which mean that the offender cannot participate in Halloween. This simply creates the two-way barrier to ensure that children aren't knocking on the door, which there's several witnesses below who did testify that having lights out is still ambiguous and that children will still approach the house and knock on the door. So an eight-year-old is going to be deterred by a posted note, forward-facing, that could be posted on a window, not even on the door. I mean, there's no requirement to be posted on the exterior door, on the front door. It just has to be posted outward-facing, right? So it could be posted on the back door, it could be posted on a window 10 feet over, and now nine-year-olds are going to be deterred by this posting? I mean, it doesn't seem to advance the government interest very much. Well, Your Honor, as we explain in our brief, we do think that it would be an unreasonable reading of the statute to suggest that the note can be placed anywhere where children would not see it. But doesn't the statute itself just say outward-facing? We don't. I can't remember because I can't remember. Well, we don't. We don't, of course, as a matter of statutory interpretation, we don't engage in literalism yet. I can go back and read the statute. Oh, anyway, I'd like to reserve, if I may, the remainder of my time for rebuttal. Thank you. Ms. Spallucci, is that, did I say it right? Yes, Your Honor. Good morning. May it please the Court, thank you for your time and attention today. My name is Janice Spallucci, and I represent appellee Thomas Sanderson. The focus of this appeal is one provision of a Missouri State law that requires all individuals required to register as a sex offender to post a public-facing sign on their home on Halloween. In a case decided by this Court, Wilson v. City of Del Nor, the Court recognized that the right to speak from one's own home is especially significant and protected by the First Amendment. Other jurisdictions, including the Eleventh Circuit, have recognized that individuals also have the right not to speak from their own home when they disagree with the message that the government requires. The courts have also recognized that placement of a government-mandated sign on a person's home exposes all who live there to the danger of significant physical harm and possible damage to or destruction of their property. In this country, we do not require people to post signs on their private residences, even if the government contends that the signs are factual, which we contest for the reasons articulated in the brief. The Supreme Court has repeatedly affirmed that the freedom of speech includes the right to refrain from speaking at all. Further, the element of the State law... Is barring signs, speech signs, any different from the constitutional standpoint than requiring signs? I'm not sure I understand your question, Your Honor. Municipal ordinances, say, that put limits on political signs. Yes, Your Honor. During election time. That's banning the most protective of speech. Yes, Your Honor, I agree. But those are basically time, place, and manner analyzed, aren't they? Well, Your Honor, what we're talking about here is not prohibiting speech. It's compelling speech. And the same thing is protected under the First Amendment. It's not protected as severely. Compelled speech is a much, much narrower category of protection. Thank you for that opinion, Your Honor. Further, the element of the State law... I think I can find Supreme Court backup for that pretty readily. Further, the element of State law at issue regulates speech, not conduct, because it forces persons to speak through a sign, thereby compelling speech. Consequently, the sign-posting requirement is presumptively unconstitutional and subject to strict scrutiny. The sign mandate at issue fails strict scrutiny because it is not necessary to serve a compelling State interest, it's not narrowly tailored to serve that interest, and it is not the least restrictive means. The law is not necessary or the least restrictive means because the remaining three elements of the Missouri State law achieve the government's interest. How about signs requiring you to post a sign where your buried utility lines are? Well, Your Honor, that is commercial speech, and I would say it doesn't fall under strict scrutiny. It's safety speech. It's safety speech. And, Your Honor, to me, this is a sign requirement. This is commercial, non-commercial. That's an invented distinction for the most part. Okay, the law is not necessary or the least restrictive means because the remaining three elements of the Missouri State law achieve the government's interest. For example, persons required to register are not allowed to answer the door on Halloween and are required to leave off all outside residential lighting. As the District Court found, these other non-speech restrictions in the statute are sufficient to achieve the interest served by the sign-posting mandate. I'm sorry. I know you're into the narrowly tailored, but I'd like to go back to the content of the note itself. Can you walk me through why this isn't just a statement of factual sort of certification of my requirements under the state law? Well, Your Honor, there are many cases where it states that even if there is a factual statement to be made, that is still protected speech. So the fact that and this — Many Supreme Court cases? Your Honor, just a moment. There are cases, for example, I'm thinking about the case involving R.J. Reynolds or R.J. Reynolds. Or Reed, where Reed said it's got to be content-based or we aren't that worried about it. Well, Your Honor, I respectfully disagree because the fact is — Justice Thomas? I think that was unanimous. Maybe add a couple concurrences. Your Honor, it's really not the language on the sign that makes a difference here. It's the fact that there is a sign that's required to be posted on the home of every single person required to register in the State of Missouri. And by the way, there's over 26,000 people. How do you get to strict scrutiny if content doesn't matter? Because there's compelled speech. The government says you have to post a sign, and the sign has to say the following, which in the case of Mr. Sanderson was not truthful. He did have candy in his residence. He was happy to share that with trick-or-treaters, but the sign said something different. So essentially, you're back where Riley was, where if you wouldn't have made this speech otherwise, the fact that the government is compelling you to make this speech makes it compelled speech. Yes, Your Honor. All right. To which I come back to this idea, what about the states which have for years imposed duties to warn on known hazards that are not obvious, right? For example, in North Dakota, if there is quicksand, you are required to post a notice that the area has quicksand, right? So if you own a piece of property and there's quicksand on it, you go out there and you put your little sign out there in your pasture that says quicksand. Obviously, the cattle don't understand it's quicksand, but, you know, in theory, somebody wandering up may see it's there. And no one has ever asserted that that speech is compelled and that speech is unconstitutional, and maybe it's just because no one's ever bothered to assert the question. But why is this different? And if it is not different, are the quicksand signs then unconstitutional as well? Your Honor, I have no personal knowledge of quicksand signs in that state or otherwise. Well. But I will tell you the reason this is different in this case is because it's not obvious. I'm sorry. It is obvious already without the signs. And the fact is there's a Megan Saab website, and if a family is concerned about going to the home of somebody who's required to register, all they have to do is look at this public website, and they'll know ahead of time where a person who is required to register lives. The other thing is for law enforcement, it's not necessary for them either because they already have this information in a government database. So ahead of time before they go on patrol to look to see if, in fact, the registrants are complying with the remaining three elements of the state law, then they can, in fact, look at that ahead of time. So the obvious part means that, in fact, this information is available to the public and also to law enforcement without the sign. And that makes the sign unnecessary. What about my standing question? Sorry, what is that, Your Honor? If he doesn't have an as-applied claim, because he is in a small core of people who obviously this is an appropriate warning, if he doesn't have an as-applied claim, how can he have standing to bring a facial claim? Your Honor, I believe he has both, an applied claim and a facial claim. He clearly has standing to bring an as-applied claim. I think it may have been pleaded, but in any event, the district court wouldn't allow it to even be inquired into. And one of the claims is that was an error of procedural law by the court not to inquire into the as-applied claim, which leads me to wonder if you had done the as-applied inquiry, either sequentially or together, and if he does not have an as-applied claim because it is appropriate as to him, how can he have standing to represent the universe of people who might have as-applied claims? In other words, a facial challenge. Well, Your Honor, Mr. Sanderson is one of over 26,000 people to whom the statute applies. That's a large number of people. And the fact is Mr. Sanderson brought this forward as a forward, I'm sorry, as a facial challenge because, indeed, it is right within the parameters. Not everybody has standing to bring facial challenges. They are very narrow and viewed with disfavor, at least in this circuit. I understand, Your Honor, but if I can get to that. This Court recognized in Rogers' Have you thought about the standing question? Yes, Your Honor. He has standing. He was, in fact, charged with and convicted of a crime. If he does not have an as-applied claim, what case would say he nonetheless can be the person to represent the class in a facial challenge? Well, Your Honor, it's Rule 23 wouldn't allow that. It is based on the facts of this case. He had probably Wait, wait. The as-applied facts aren't before us. I agree. So if I can continue. The 28-J letter suggests the most recent, if you had an as-applied trial today, there's a lot of negative stuff that would doubtless be relevant, if not admissible. Well, Your Honor, if, in fact, every 26,000 people to whom this statute applies were to file a lawsuit as an applied challenge or as a facial challenge, it would, in fact, severely impact the federal judicial system. I don't think that's what this Court or any court would You've got to have a good-named plaintiff for a class action. If I might continue, Your Honor. This Court recognized in Rogers v. Bryant that statewide injunctions do not raise all the same concerns as nationwide injunctions. We ask this Court to affirm its ruling in light of Trump v. CASA, a recent decision issued by the Supreme Court, which is distinguishable for at least two reasons. First, CASA does not address a statewide injunction of a facially unconstitutional and overbroad state law on First Amendment grounds. Instead, CASA addresses a nationwide preliminary injunction against an executive action. That decision, unlike this case, was not a First Amendment challenge and was based upon an incomplete record as there had been no trial. You're right. That's a preliminary injunction. And yet, when you read that opinion, the Trump v. CASA, where do you see that distinction being made by the Court in terms of their analysis of the appropriate use of an injunction? Well, Your Honor, obviously, time will tell us more specifically the meaning of that case as it's applied in subsequent cases. But again, I think it's very – the facts of Trump v. CASA are to be distinguished from the facts in this case, including the fact that there had not been a trial yet there. And we have had a trial. There's been findings of fact. There's been a decision by a district court judge. The other thing is that the Halloween sign requirement here is overbroad because it applies to every person required to register. And if the Halloween sign requirement is not enjoined, as I mentioned before, each one of those individuals, more than 26,000 people, could file their own lawsuit and overburden the federal judicial system. So what, in your view, is the difference? You said this is a statewide versus nationwide injunction. Yes. What's the – where do you find that sort of wedge between those in Trump v. CASA? Well, actually, I go back to this Eighth Circuit case, Rogers v. Bryant, that says right there that statewide injunctions and nationwide injunctions are different from each other. And so we are asking this Court to affirm its decision, Rogers v. Bryant, even in light of Trump v. CASA. And a – what case distinguishes state and national? Rogers v. Bryant, Your Honor. Pardon? Rogers v. Bryant. What year was that? I don't have that citation in front of me right now, but I can certainly get it. Okay. Our case in 2019. Yes, Your Honor. Three. In conclusion, we request that this Court affirm the District Court's decision, including its issuance of a statewide permanent injunction. Are there any further questions? Thank you. Thank you again, Your Honors. To pick back up with the point about the quicksand sign, even though some individuals may not notice the sign or might choose to ignore it, that doesn't negate the State's strong interest in still requiring the posting of the sign. The same is true here for requiring the sex offenders to post a message to children who are themselves very unlikely to go on the SORNA website and then be sure to avoid the house. But with quicksand, the quicksand sign, what's the least – what's less restrictive than that? And, like, I think the example is you've just got to have a sign to tell people there's quicksand. And here there's just a sign to say that this – But there's also the analysis that there was – that was not the least restrictive means to achieve the compelling interest of protecting children. So I do think there's a bit of a difference. Ultimately, the fact that this requirement is not requiring the sex offender to disclose the fact that they are a sex offender, as was true in the Eleventh Circuit case, that makes this the least restrictive means for a sign such as this. Unless Your Honors have any further questions, I thank the Court for its time. Thank you, Counsel. The case has been thoroughly briefed and the question is significant and complicated. We'll take it under advisement.